**Robert Ralph STAHLE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 05–96–01228–CR to 05–96–01232–CR.**

Court of Appeals of Texas,
Dallas.

May 18, 1998.

Don N. High, Plano, for Appellant.

Carrie Roberge Chavez, McKinney, for State.

Before LAGARDE, WHITTINGTON and ROACH, JJ.

## OPINION

WHITTINGTON, Justice.

Robert Ralph Stahle appeals four convictions for indecency with a child and one conviction for aggravated sexual assault. Appellant pleaded guilty to the indecency charges and not guilty to the aggravated sexual assault charge. After finding appellant guilty in all five cases, the jury assessed punishment at twenty years' confinement in each indecency case and life imprisonment in the aggravated sexual assault case. In ten points of error, appellant contends the trial judge erred in (1) admitting evidence of extraneous offenses during trial, (2) failing to suppress oral and written statements made by appellant during custodial interrogation, (3) not requiring the State to elect the particular acts of sexual contact it would rely on at trial, and (4) failing to quash the indictments. In two additional points of error, appellant contends the evidence is legally and factually insufficient to support his convictions. For the reasons set forth below, we affirm the trial court's judgments.

### BACKGROUND

On August 18, 1995, appellant appeared at the Plano police station and spoke to Plano police detective Michael Johnson. During the course of the videotaped interview, appellant told Johnson that, seven or eight years before, he had fondled his six or seven year old niece in the living room of his home. According to appellant, there were a number of other people in the room at the time and, as best as he could recall, the fondling occurred on only several occasions over the period of a few days.[1] Appellant told John-

---

1. Appellant told Johnson the situation recently came to light during a conversation his niece (C.T.) had with her grandmother about the possibility of C.T. moving into appellant's home. According to appellant, C.T.'s father came to appellant shortly after C.T.'s disclosure, and appellant admitted to him that C.T.'s allegations were true and that he was "very ashamed of the situation."

son he decided to come to police after discussing the problem with his therapist and deciding he "wanted to take care of it." During the course of the conversation, appellant also told Johnson about a similar incident that occurred a year or so after the incident with his niece. This incident, according to appellant, involved a six or seven year old girl from appellant's neighborhood. Appellant told Johnson the fondling occurred approximately five or six times over a period of a year to a year and a half. Appellant described the fondling of both girls as "just touch[ing]" inside and outside the clothing, but not any sort of penetration. During the interview, appellant told Johnson there were no similar incidents with other girls. Following the interview, appellant wrote and signed a written statement summarizing the events he had just described. Thereafter, appellant left the police station.

After meeting with appellant, Johnson began an investigation. Later, on September 5, 1995, appellant contacted Johnson again and told him he wanted to talk. When appellant returned to the station, Johnson conducted a second videotaped interview with appellant. This time, appellant told Johnson that he realized, after further counseling, that he had in fact engaged in some additional, inappropriate behavior with two other seven or eight year old girls. Appellant told Johnson the instances again involved appellant touching the girls' genitals, but this time outside their clothing. Again, following his discussions with Johnson, appellant wrote and signed a written statement detailing the events he had just described.

After meeting with appellant the second time, Johnson continued his investigation. Following that investigation, Johnson called appellant and asked him to come back to the station. Appellant did so and, on September 12, 1995, Johnson conducted a third videotaped interview with appellant. During this interview, appellant reiterated to Johnson that while he touched the girls inappropriately, he did not penetrate any of them. Following this interview, appellant again wrote and signed a written statement. During trial, all three statements were admitted into evidence before the jury. The third written statement was admitted only at punishment, not at guilt/innocence. Shortly after the third interview, on September 30, 1995, appellant was arrested for aggravated sexual assault and indecency with a child.

In June 1996, appellant pleaded guilty before the jury to the indecency with a child charges and not guilty to two aggravated sexual assault charges. During the joint trial that followed, the State presented testimony from twelve witnesses, including the five complainants (C.T., R.B., A.S., N.T., and D.T.). After hearing from these witnesses, the jury found appellant guilty of four counts of indecency with a child and one count of aggravated sexual assault. The jury later assessed punishment in each case. These appeals followed.

SUFFICIENCY OF THE EVIDENCE

In his ninth and tenth points of error, appellant contends the evidence is legally and factually insufficient to support his convictions. Under these points, appellant contends we must reverse his convictions because the State presented no evidence or, alternatively, insufficient evidence to show appellant *knowingly* committed aggravated sexual assault or indecency with a child. After reviewing the record in these causes, we cannot agree.

When reviewing a challenge to the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict. *Turner v. State*, 805 S.W.2d 423, 427 (Tex.Crim.App.), *cert. denied*, 502 U.S. 870, 112 S.Ct. 202, 116 L.Ed.2d 162 (1991); *Flournoy v. State*, 668 S.W.2d 380, 383 (Tex. Crim.App.1984). We determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Chambers v. State*, 866 S.W.2d 9, 15 (Tex.Crim.App.1993), *cert. denied*, 511 U.S. 1100, 114 S.Ct. 1871, 128 L.Ed.2d 491 (1994). This standard leaves to the jury, as factfinder, the responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic to ultimate facts. *See Dumas v. State*, 812 S.W.2d 611, 615 (Tex.App.—Dallas 1991, pet.

ref'd). The jury is the exclusive judge of the witnesses' credibility and the weight to be given their testimony. TEX.CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979); *Bonham v. State,* 680 S.W.2d 815, 819 (Tex.Crim.App. 1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 153 (1985); *Dumas,* 812 S.W.2d at 615. Thus, the jury is free to accept or reject any or all of the evidence presented by either side. *See Saxton v. State,* 804 S.W.2d 910, 914 (Tex.Crim.App. 1991).

By contrast, in conducting a factual sufficiency review, we examine the jury's weighing of the evidence. *See Clewis v. State,* 922 S.W.2d 126, 133 (Tex.Crim.App. 1996). In so doing, we view all the evidence without the prism of "in the light most favorable to the prosecution." *See Clewis,* 922 S.W.2d at 134; *see also Cain v. State,* 958 S.W.2d 404, 407 (Tex.Crim.App.1997). Nevertheless, we must appropriately defer to the jury's findings so as to avoid substituting our judgment for that of the jury. *See Clewis,* 922 S.W.2d at 133, 135. The purpose of our review is only to prevent a manifestly unjust result, and we are not free to set aside a jury's determination merely because we feel a different result is more reasonable. *See Clewis,* 922 S.W.2d at 135; *see also Cain,* 958 S.W.2d at 407. We will reverse a case for factual insufficiency only if the jury's determination "is against the *great* weight of the evidence presented at trial so as to be *clearly wrong and unjust." See Clewis,* 922 S.W.2d at 135; *see also Cain,* 958 S.W.2d at 407.

### Aggravated Sexual Assault

A person commits the offense of aggravated sexual assault if he intentionally or knowingly causes the penetration of the female sexual organ of a child and the child is younger than fourteen years of age. *See* Act of July 18, 1987, 70th Leg., 2d C.S., ch. 16, § 1, 1987 Tex. Gen. Laws 80, 80, *amended by* Act of May 29, 1993, 73d Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3620, *amended by* Act of May 29, 1995, 74th Leg., R.S., ch. 318, § 7, 1995 Tex. Gen. Laws 2734,

2737, *amended by* Act of May 28, 1997, 75th Leg., R.S., ch. 1286, § 2, 1997 Tex. Gen. Laws 4911, 4911 (current version at TEX. PENAL CODE ANN. § 22.021(a) (Vernon Supp. 1998)). Under the penal code, a person acts knowingly or with knowledge with respect to the nature of his conduct when he is aware of the nature of the conduct. TEX. PENAL CODE ANN. § 6.03(b) (Vernon 1994). Knowledge may be inferred from an accused's acts, words, and conduct. *See Martinez v. State,* 833 S.W.2d 188, 196 (Tex.App.—Dallas 1992, pet. ref'd).

In this case, appellant contends the evidence is legally and factually insufficient to show he *knowingly* committed aggravated sexual assault against C.T. After reviewing the record in this cause, we cannot agree. We note initially that the charge in this case authorized the jury to convict appellant if it found *either* that he committed the aggravated sexual assault knowingly *or* intentionally. On appeal, appellant has not challenged the sufficiency of the evidence to support a finding that appellant committed the offense in this case intentionally. Because the court's charge authorized a conviction based on a finding of intentionally and appellant has not challenged that finding on appeal, we conclude we need not address appellant's ninth point of error because our disposition of that point would have no effect on appellant's conviction.

Nevertheless, we conclude, after reviewing the entire record in this case, that the evidence was legally and factually sufficient to support appellant's conviction. During trial, C.T. repeatedly testified that, while visiting appellant and his family at appellant's home, appellant would ask her to sit on his lap, under a blanket, and then he would "stick his finger in [her] vagina." On further questioning by the prosecutor, C.T. testified she knew appellant was sticking his finger inside her because she "could feel it" and "it hurt." C.T.'s father corroborated much of C.T.'s testimony, noting that when he confronted appellant about C.T.'s allegations, appellant admitted "put[ting] his finger inside of C.T."[2]

2. C.T.'s father specifically testified as follows:

[Appellant] said he had done something that he wasn't proud of and I asked him what, and

We conclude, after reviewing this evidence in the light most favorable to the verdict, that any rational jury could have found beyond a reasonable doubt that (1) appellant, as a grown adult, was aware of the nature of his conduct; and (2) appellant therefore caused the penetration of C.T.'s sexual organ knowingly. Accordingly, we conclude the evidence is legally sufficient to sustain appellant's conviction for aggravated sexual assault. We likewise conclude, after reviewing all the evidence presented at trial, that the jury's finding was not so against the great weight of the evidence as to be clearly wrong and manifestly unjust. Although appellant repeatedly told Johnson that he did not penetrate any of the girls, C.T. testified to the contrary, noting that, during the incidents, appellant "put his finger *inside* [her]." The jury was entitled to believe C.T.'s testimony and disbelieve appellant's statements to Johnson. *See Clewis*, 922 S.W.2d at 133, 135. Because we may not substitute our judgment for that of the jury, we conclude the evidence is factually sufficient to support appellant's conviction for aggravated sexual assault. We overrule appellant's ninth point of error.

### Indecency with a Child

 In felony cases, a plea of guilty before the jury admits the existence of all elements necessary to establish guilt and, in such cases, the introduction of evidence by the State is only to enable the jury to intelligently determine punishment. *See Holland v. State*, 761 S.W.2d 307, 312 (Tex.Crim.App. 1988), *cert. denied*, 489 U.S. 1091, 109 S.Ct. 1560, 103 L.Ed.2d 863 (1989); *Ex parte Williams*, 703 S.W.2d 674, 678 (Tex.Crim. App.1986); *Williams v. State*, 674 S.W.2d 315, 318 & n. 3 (Tex.Crim.App.1984) (noting that no evidence need be entered when appellant pleads guilty before jury). In such cases, the plea of guilty is conclusive as to the defendant's guilt and there is no question of the sufficiency of the evidence on appeal.

*See Ex parte Martin*, 747 S.W.2d 789, 792 (Tex.Crim.App.1988) (op. on reh'g); *Ex parte Williams*, 703 S.W.2d at 678; *Brinson v. State*, 570 S.W.2d 937, 938–39 (Tex.Crim.App. [Panel Op.] 1978).

 Here, appellant pleaded guilty before the jury to the indecency charges, and these causes were submitted to the jury on punishment. As noted above, appellant's pleas of guilty admitted the existence of all elements of the charged offenses, and appellant neither withdrew nor attempted to withdraw those pleas during trial. Nor has appellant challenged the voluntariness of those pleas on appeal. Because appellant pleaded guilty to the charged offenses before the jury, we conclude (1) the State was not required to present any evidence to support appellant's convictions, and (2) appellant may not now challenge the sufficiency of the evidence to support those convictions. *See Ex parte Williams*, 703 S.W.2d at 678; *see also Helton v. State*, 886 S.W.2d 465, 466 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). We overrule appellant's tenth point of error.[3]

### Extraneous Offenses

In his first, second, third, fourth, and fifth points of error, appellant contends the trial judge erred in admitting into evidence certain extraneous offenses allegedly committed by appellant against the five complainants. According to appellant, admission of these extraneous offenses was improper because (1) the evidence was not relevant to any issue at trial, and (2) any probative value associated with the evidence was substantially outweighed by the danger of unfair prejudice. Additionally, appellant contends in his sixth point of error that we must reverse his convictions because the "cumulative effect" of the trial court's error in admitting the complained-of evidence was "overly prejudicial" to him. After reviewing the record in these

---

he said he had fondled [C.T.], and I said, that he put his finger inside of her, and he said, *I guess I did.*
(Emphasis added.)

**3.** We note additionally that although appellant contends under this point that the evidence was legally and factually insufficient to support his

conviction for indecency with C.T., a review of the record indicates appellant was not convicted of indecency in the case involving C.T.; his conviction in that case was for aggravated sexual assault, and we have previously concluded the evidence was sufficient to support that conviction.

causes, we cannot agree with appellant on any of these points.

Article 38.37 of the Texas Code of Criminal Procedure states, in pertinent part, that:

Notwithstanding Rules 404 and 405, Texas Rules of Criminal Evidence, evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense *shall be admitted* for its bearing on relevant matters, including:

(1) the state of mind of the defendant and the child; and

(2) the previous and subsequent relationship between the defendant and the child.

TEX.CODE CRIM. PROC. ANN. art. 38.37, § 2 (Vernon Pamph.1998) (emphasis added). Article 38.37 applies to prosecutions for sexual offenses committed against a child under seventeen years of age. *Id.* § 1. By enacting article 38.37, the legislature in effect determined that, in certain sexual abuse cases, evidence of "other crimes, wrongs, or acts" committed by the accused against the child victim are relevant and admissible under rule 402 (and notwithstanding rules 404 and 405). *See Hinds v. State,* 970 S.W.2d 33, 35 (Tex.App.—Dallas, 1998, no pet.).

 Under the language of article 38.37, evidence of extraneous crimes, wrongs, or acts committed by the appellant against one child victim are admissible in a case involving that child victim. We conclude the complained-of evidence in these cases meets this requirement (at least with respect to the admission of extraneous offenses relating to one child victim in the case involving that child victim) because the evidence involves additional, uncharged acts of improper fondling by appellant against the child victims. Because the complained-of evidence meets the requirements for admission under article 38.37, we conclude (at least with respect to the admission of extraneous offenses against

the same child victim) that the evidence was properly admitted. We likewise conclude, after reviewing the record as a whole, that the probative value of the evidence (at least as it relates to the same child victim) was not substantially outweighed by the danger of unfair prejudice. TEX.R.CRIM. EVID. 403. Accordingly, we conclude the trial judge did not err in admitting evidence of extraneous offenses against one child victim in the case involving that child victim.[4]

 This does not, however, end our inquiry. We must still decide whether the admission of extraneous offenses against one child victim was properly admitted in the cases involving the remaining child victims. Under the circumstances presented in these cases, we conclude that it was. As noted above, the cases against appellant were consolidated for trial and, from the record before us, it does not appear appellant objected to the trial judge's decision to consolidate the cases. The failure to object to a consolidation of cases either before or during trial constitutes an implied consent to the consolidation. *See Milligan v. State,* 764 S.W.2d 802, 803 (Tex.Crim.App.1989); *Yohey v. State,* 801 S.W.2d 232, 244 (Tex.App.—San Antonio 1990, pet. ref'd) (noting that defendant who fails to object to consolidation of two or more cases in single trial is deemed to have given consent to consolidation). Thus, by failing to object to the consolidation of appellant's cases, appellant effectively agreed to the admission of extraneous offense evidence relating to one child victim in the cases involving the other child victims. Under these circumstances, we conclude appellant cannot now complain about the admission of extraneous offense evidence relating to one child victim in the cases involving the other child victims.

For the reasons stated, we overrule appellant's first, second, third, fourth, and fifth points of error. Having found no error in

---

**4.** We note additionally that although appellant pleaded guilty to the indecency charges before the jury (and thus relieved the State of any burden to produce evidence in those cases), the State was nevertheless entitled to produce evidence in those cases if it so desired. *See Bagley v. State,* 776 S.W.2d 582, 583 (Tex.Crim.App. 1989) (noting that relevant facts are admissible

regardless of plea); *Wilkerson v. State,* 736 S.W.2d 656, 659 (Tex.Crim.App.1987) (noting that State's right to introduce evidence was not restricted by entry of guilty plea before jury). As the court of criminal appeals recognized in *Wilkerson,* facts that are relevant and admissible under a plea of not guilty are also admissible under a plea of guilty. *Wilkerson,* 736 S.W.2d at 659.

the trial judge's decision to admit the subject evidence at trial, we likewise reject the argument in appellant's sixth point of error that the "cumulative effect" of the trial judge's error requires reversal. We overrule the sixth point of error.

## ORAL AND WRITTEN STATEMENTS

In his seventh and eighth points of error, appellant contends the trial judge erred in failing to suppress the oral and written statements he made to Johnson prior to his arrest. According to appellant, these statements should have been suppressed because (1) they were the product of custodial interrogation, and (2) he did not receive proper warnings prior to making the statements. After reviewing the record in these causes, we cannot agree.

Article 38.22 of the code of criminal procedure sets out certain requirements for admitting an accused's oral and written statements when those statements are made as a result of custodial interrogation. See TEX.CODE CRIM. PROC. ANN. art. 38.22 (Vernon 1979 & Pamph.1998). Article 38.22 specifically excludes from its requirements any statement that does not stem from custodial interrogation. See TEX.CODE CRIM. PROC. ANN. art. 38.22, § 5 (Vernon 1979) (noting that nothing in article "precludes the admission of ... a statement that does not stem from custodial interrogation"). "Custodial interrogation" is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." See Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). A person is in custody for purposes of article 38.22 if, "under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest." See Dowthitt v. State, 931 S.W.2d 244,

254 (Tex.Crim.App.1996); see also Brown v. State, 960 S.W.2d 265, 270 (Tex.App.—Corpus Christi 1997, no pet.). The "reasonable person" standard presupposes an *innocent* person. Under this standard, the subjective intent of law enforcement officials to arrest is irrelevant unless that intent is somehow communicated or otherwise manifested to the suspect. See Dowthitt, 931 S.W.2d at 254; Sliva v. State, 936 S.W.2d 721, 725 (Tex. App.—El Paso 1996, pet. filed).[5]

A person need not be under formal arrest to be considered subject to custodial interrogation. See Melton v. State, 790 S.W.2d 322, 325 (Tex.Crim.App.1990). Determining whether a person is in custody in a given situation is a question to be determined on an ad hoc basis, after considering *all* the objective circumstances. See Dowthitt, 931 S.W.2d at 255. Thus, the mere fact that questioning occurs at a stationhouse does not, in and of itself, constitute custody. See Dowthitt, 931 S.W.2d at 255. However, the fact that an interrogation starts out being noncustodial in nature does not mean that custody cannot arise later as a result of police conduct during the encounter. Police conduct during an encounter *can* cause an initially consensual inquiry to escalate into custodial interrogation. See Dowthitt, 931 S.W.2d at 255.

The court of criminal appeals has outlined at least four general situations which may constitute custody for purposes of article 38.22:(1) when a suspect is physically deprived of his freedom of action in any significant way; (2) when a law enforcement officer tells a suspect he cannot leave; (3) when law enforcement officers create a situation that would lead a reasonable person to believe his freedom of movement has been significantly restricted; and (4) when probable cause to arrest exists and law enforcement officers do not tell the suspect he is free to leave. See Dowthitt, 931 S.W.2d at

---

5. Although the court of criminal appeals has in the past recognized four factors as being relevant to the custody determination (*i.e.*, probable cause to arrest, subjective intent of police, focus of investigation, and subjective belief of defendant), the United States Supreme Court has since held that the second and fourth factors are irrelevant except to the extent they may be manifested in

the words or actions of law enforcement officials. See Dowthitt, 931 S.W.2d at 254 (citing Stansbury v. California, 511 U.S. 318, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994) (per curiam)); Sliva, 936 S.W.2d at 725. Thus, the custody determination is now based entirely on objective circumstances. See Dowthitt, 931 S.W.2d at 254; Sliva, 936 S.W.2d at 725.

255 (citing *Shiflet v. State*, 732 S.W.2d 622, 629 (Tex.Crim.App.1985)). As these four situations indicate, the initial determination of custody under the Supreme Court's *Stansbury* test depends on the *objective* circumstances of the interrogation, not on the subjective views of the interrogating officer or the person being questioned. *See Stansbury*, 511 U.S. at 325, 114 S.Ct. 1526 (noting that even clear statement by officer that person under interrogation is prime suspect is not itself dispositive of custody issue because some suspects are free to come and go until police decide to make arrest); *Rodriguez v. State*, 939 S.W.2d 211, 216 (Tex.App.—Austin 1997, no pet.) (op. on reh'g) (same).

We have reviewed the record in these causes and, after doing so, we conclude (1) appellant was not in custody at the time he gave his oral and written statements, and (2) those statements were therefore not subject to the requirements of article 38.22. In this case, appellant voluntarily appeared at the Plano police station on four separate occasions to talk to Johnson. The first time, appellant appeared at the station unannounced, but Johnson was not present, and appellant was asked to return the following day. Appellant returned the following day of his own volition and indicated a desire to tell his story to Johnson. Before being contacted by appellant, the police were completely unaware of any criminal activity involving appellant. In addition, during the course of the conversation between appellant and Johnson, Johnson told appellant he was free to leave the interview at any time. According to Johnson, the door to the interview room remained open throughout the interview, and it in fact "was never locked." Following the first videotaped interview, appellant was allowed to leave the station.

Several weeks later, on September 5th, appellant again contacted Johnson of his own volition and indicated a desire to talk further. During this interview, Johnson read appellant his *Miranda* rights and appellant then voluntarily disclosed additional, incriminating information to Johnson. However, during the interview, Johnson again told appellant he was free to leave, and appellant did in fact leave the station following the interview. Then, on September 12th, Johnson contacted appellant and asked him to return to the station. According to Johnson, he "asked [appellant] if he would be willing to come back down and talk to [him]," and appellant agreed.[6] Once at the station, Johnson again read appellant his *Miranda* rights and appellant engaged in another discussion with Johnson. During that discussion, appellant made reference to having an attorney, and Johnson told appellant that Johnson could not talk to him anymore and appellant needed to leave. According to Johnson, appellant refused to leave, saying he did not want to talk to a lawyer. At that point, Johnson again assured appellant that the door was open and he was free to leave at any time. Appellant did in fact leave the station once the third interview was concluded.

It appears from the record that, despite Johnson's repeated assurances that appellant was free to terminate the interviews, appellant chose to remain at the station and discuss the allegations involved in these cases at length. Johnson testified at the suppression hearing that appellant was not under arrest during any of the interviews. On all three occasions, appellant ultimately wrote and signed written statements about the offenses. Although these statements appear to have been written at Johnson's suggestion, nothing in the record shows that appellant's free-

---

6. Although appellant's wife testified at the suppression hearing that (1) she and her husband had only eight minutes to get to the station or Johnson said they would both be arrested, and (2) they therefore did not believe they had any choice but to go to the station, Johnson disputed this testimony during the hearing. The trial judge was the factfinder at the suppression hearing and, as such, was entitled to believe Johnson's testimony and disbelieve the testimony from appellant's wife. *See Green v. State*, 615 S.W.2d 700, 707 (Tex.Crim.App. [Panel Op.]

1980), *cert. denied*, 454 U.S. 952, 102 S.Ct. 490, 70 L.Ed.2d 258 (1981). Because this issue involves a question of credibility, we defer to the trial court's resolution of the issue. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997) (noting that appellate court should give almost total deference to trial court's determination of historical facts that are supported by record, especially when trial court's fact findings are based on evaluation of credibility and demeanor).

dom of action was in any way hampered before, during, or after he agreed to execute the statements. *See Wicker v. State,* 740 S.W.2d 779, 786–87 (Tex.Crim.App.1987), *cert. denied,* 485 U.S. 938, 108 S.Ct. 1117, 99 L.Ed.2d 278 (1988). Moreover, on each occasion, after making the written statements, appellant was allowed to leave the station. In fact, appellant was not formally arrested until more than two weeks after giving his final oral and written statement.

■ Under these circumstances and in light of the reasonable person standard set out in *Stansbury* and *Dowthitt,* we conclude appellant was not in custody for purposes of article 38.22 at the time the oral and written statements were made. Contrary to appellant's contentions, the fact that (1) Johnson considered appellant to be a suspect at the time of the statements, and (2) appellant was the focus of the investigation during those statements, does not conclusively establish "custody" for purposes of article 38.22. *See Stansbury,* 511 U.S. at 322–26, 114 S.Ct. 1526. Because we conclude, based on the objective factors presented in this case, that a reasonable person in appellant's circumstances would not have believed, at the time of the statements, that his freedom of movement was restrained to the degree associated with a formal arrest, *see Dowthitt,* 931 S.W.2d at 254, we conclude appellant's statements were not the result of custodial interrogation. Thus, article 38.22 did not apply to the statements, and the trial judge did not err in admitting the statements over appellant's objections.

We note additionally that although appellant also contends the statements should have been suppressed because they included inadmissible extraneous offenses that were not relevant and whose probative value, if any, was substantially outweighed by the danger of unfair prejudice, we need not address this argument at least with respect to the first two written statements and the three oral statements because we have previously concluded that the extraneous offenses discussed in those statements were properly admitted by the trial court during guilt/innocence. With respect to the extraneous offenses included in the third written state-

ment admitted at punishment, we conclude we need not address this point because it has not been adequately briefed.

■ Rule 38.1(h) of the rules of appellate procedure requires an appellant to include in his brief a "clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex. R.App. P. 38.1(h). Here, appellant made only a conclusory statement in his brief that the third written statement was objectionable because it included extraneous offenses that were (1) not relevant, (2) barred by limitations, and (3) so remote that their probative value was substantially outweighed by their danger of unfair prejudice. Other than fleeting references to rules 402, 403, and 404(b) of the rules of criminal evidence, appellant provides no discussion or analysis of relevant authorities or the record to support his argument. Under these circumstances, we cannot conclude this point has been adequately preserved for our review. *See Menchaca v. State,* 901 S.W.2d 640, 649–50 (Tex.App.—El Paso 1995, pet. ref'd) (concluding appellant waived point of error because, although appellant mentioned Sixth Amendment and Texas Rule of Criminal Evidence 801, he did not cite any case authority or provide any analysis in support of argument).

■ We reach a similar conclusion with respect to appellant's passing suggestion that his third oral and written statements were also objectionable because they were made after appellant invoked his right to counsel. Again, appellant provides no discussion or analysis of the effect, if any, of his invocation of his right to counsel, no citation to the record, and no reference to any legal authorities other than the Sixth Amendment to the United States Constitution. Under these circumstances, we conclude appellant has failed to adequately brief his argument. *See Menchaca,* 901 S.W.2d at 649–50.

For the reasons stated, we overrule appellant's seventh and eighth points of error.

### Election

In his eleventh point of error, appellant contends the trial judge erred in not requiring the State to elect the particular acts of

sexual contact it would rely on to support the convictions in these cases. For the reasons set forth below, we overrule appellant's eleventh point of error.

■ When the evidence shows two or more acts of sexual contact, each of which is an offense for which the defendant may be convicted, and the indictment charges only one offense, the State is required to elect which act it will rely on to secure a conviction, provided the accused makes a motion for election. *See Scoggan v. State,* 799 S.W.2d 679, 680 n. 3 (Tex.Crim.App.1990). In these cases, appellant sought an election by the State, and the State did in fact elect the particular acts of sexual contact on which it intended to proceed in each case. That election is evidenced by a letter in the clerk's records dated May 21, 1996 from the assistant district attorney to the trial judge. Although the election does not specify the particular acts alleged by date, it does describe the acts relied on with reference to the location and circumstances surrounding the conduct. Indeed, appellant appears to recognize this very fact in his appellate brief when he states that the trial judge *did* require the State to make an election and, by doing so, he "carefully and adequately protected" appellant's rights. Because appellant has recognized his rights were "adequately" protected by the election made in these cases, we conclude this point, which complains about the *failure* to require an election, lacks merit.

■ Nevertheless, we note two additional arguments made by appellant under this point: (1) appellant contends his constitutional right to be indicted by a grand jury was violated because there was no showing the acts designated by the State were the same acts presented to the grand jury in these cases; and (2) appellant contends the indictments in these cases were not sufficiently certain to protect him from being twice placed in jeopardy for the same offense. With respect to the first point, we note that the court of criminal appeals recently ad-

dressed this precise argument in *Sledge v. State,* 953 S.W.2d 253 (Tex.Crim.App.1997). In that case, the court of criminal appeals found no violation of the right to grand jury indictment because, among other things, there was no reason to believe the offenses presented to the grand jury were different from the offenses proven at trial. *See Sledge,* 953 S.W.2d at 256. Like the situation in *Sledge,* there is no reason to believe the testimony presented to the grand jury in these cases related to offenses other than those proven by the State during trial. Because there is no evidence showing (1) what evidence was presented to the grand jury, and (2) whether that evidence varied from the evidence relied on by the State to secure convictions in these cases, we conclude, as did the court in *Sledge,* that appellant's argument lacks merit. *See Sledge,* 953 S.W.2d at 256.

■ We reach a similar conclusion with respect to appellant's argument that the indictments in these cases, because they alleged only an "on or about" date, failed to adequately protect him from being twice placed in jeopardy for the same offense. As the court of criminal appeals recently recognized in *Ex parte Goodbread,* 967 S.W.2d 859, 860–61 (Tex.Crim.App.1998), trial upon indictment does not bar every offense that could be prosecuted under the indictment's language. To the contrary, trial upon indictment bars prosecution only for offenses for which proof was offered at trial. Even then, however, certain instances of misconduct can, as in this case, be excluded from the jeopardy bar through an election by the State. *See Ex parte Goodbread,* at 860–61. The court's opinion in *Goodbread* makes clear that jeopardy determinations are made by reference to the entire record of a previous proceeding and not simply by reference to the allegations in the indictment. That being the case, we conclude that use of the "on or about" language does not alone violate an accused's constitutional protections against double jeopardy.[7]

7. We note additionally, as did the Fort Worth court in *Sledge,* that while article 21.04 of the code of criminal procedure requires an indictment to be sufficiently certain to enable an accused to plead the judgment in bar of a further

prosecution, *see* TEX.CODE CRIM. PROC. ANN. art. 21.04 (Vernon 1989), case law in this State has attempted to balance the due process interests of those accused of committing crimes against children against the interest of the State in prosecut-

For the reasons stated, we overrule appellant's eleventh point of error.

### MOTIONS TO QUASH

In his twelfth point of error, appellant contends the trial judge erred in denying his motions to quash the indictments in these cases. According to appellant, failing to quash the indictments violated his right to due process of law because the indictments, by alleging the offenses were committed "on or about" a certain date, failed to give him adequate notice of the particular acts charged against him. We disagree.

 We note initially that with respect to appellant's convictions in the indecency cases, appellant has waived any error associated with the denial of his motions to quash. The law in this State is well settled that a guilty plea entered without benefit of a plea bargain waives all nonjurisdictional defects occurring prior to entry of the plea. *See Helms v. State*, 484 S.W.2d 925, 927 (Tex.Crim.App.1972); *see also Splawn v. State*, 949 S.W.2d 867, 870 (Tex.App.—Dallas 1997, no pet.) (noting that *Helms* waiver rule applies to guilty pleas before jury as well as before court). In the indecency cases, appellant pleaded guilty to the charged offenses without benefit of a plea bargain and thus, under *Helms*, appellant waived all pre-plea, nonjurisdictional defects. Appellant's twelfth point of error complains of the trial judge's rulings on appellant's pretrial motions to quash. Under this point, appellant argues the indictments were defective because they failed to give him adequate notice of the charges against him, not that they somehow failed to vest the trial court with jurisdiction over the cases. *See Studer v. State*, 799 S.W.2d 263, 273 (Tex.Crim.App.1990) (holding that presentment of charging instrument to trial court confers jurisdiction even if instrument is defective). Because this complaint involves a nonjurisdictional defect occurring prior to the entry of appellant's pleas, we conclude appellant has waived this

complaint in the indecency cases. *See Helms*, 484 S.W.2d at 927.

 Turning to appellant's complaint about the denial of his motion to quash in the aggravated sexual assault case, we note that the State need not allege a specific date in an indictment. *See Sledge*, 953 S.W.2d at 255–56. Although an indictment is required to provide an accused with sufficient notice of the charges against him, under Texas law, an indictment may allege commission of an offense "on or about" a certain date, and this allegation allows the State to prove a date other than the one alleged in the indictment as long as the date is anterior to presentment of the indictment and within the statutory limitations period. *See Sledge*, 953 S.W.2d at 256. An indictment that alleges commission of an offense "on or about" a certain date puts the defendant on notice that he must be prepared to respond to proof showing the alleged act or acts of criminal misconduct occurred within the applicable statute of limitations. *See Thomas v. State*, 753 S.W.2d 688, 693 (Tex.Crim.App.1988).

Here, the indictment alleged that appellant committed the offense of aggravated sexual assault "on or about" August 1, 1989. This allegation put appellant on notice that he must be prepared to defend against proof showing he committed the offense at any time prior to presentment of the indictment and within the applicable statute of limitations. *See Thomas*, 753 S.W.2d at 693. Under existing Texas law, this was all that was required to provide appellant with adequate notice of the charge against him. *See Sledge*, 953 S.W.2d at 258 (Mansfield, J., concurring); *Garcia v. State*, 907 S.W.2d 635, 636 (Tex. App.—Corpus Christi 1995, pet. granted) (concluding that "on or about" date provided defendant with sufficient notice). Under these circumstances, we conclude no due process violation is shown. *See Sledge*, 953 S.W.2d at 258 (Mansfield, J., concurring) (noting that "on or about" date gave appellant adequate notice of charges against him

---

ing cases involving child victims. *See Sledge v. State*, 903 S.W.2d 105, 109 (Tex.App.—Fort Worth 1995), *aff'd*, 953 S.W.2d 253 (Tex.Crim. App.1997). In so doing, courts have determined

that allowing broad, general pleading, limited by a form of bill of particulars, best protects these competing interests. *See Sledge*, 903 S.W.2d at 109.

so as to satisfy due process concerns).[8] We overrule appellant's twelfth point of error.

We affirm the trial court's judgments.

---

8. Although appellant again argues under this point that the "on or about" language was improper because it prevented him from pleading the judgments in these cases in bar of a subsequent prosecution, we have already addressed this argument in connection with point of error eleven.