In The
Court of Appeals
For The
First District of Texas
____________
NO. 01-01-00409-CR
____________

BEHROOZ DAFTARIAN, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 85th District Court 
Brazos County, Texas
Trial Court Cause No. 27,675-85


 
 
OPINION ON MOTION FOR REHEARING
          The Court considered appellant’s motion for rehearing. We deny appellant’s motion
for rehearing, but we withdraw our opinion dated May 30, 2002 and issue this opinion in its
place.
          Appellant was charged with two counts of aggravated sexual assault of a child. 
Appellant pled not guilty to both counts. A jury found him guilty of both counts and assessed
punishment at life in prison. We affirm. 
                                                       BACKGROUND
           In October 1997, the victim, A.S., began working for appellant at his modeling studio. 
A.S. was seven years old at the time. Appellant was a family friend and worked with A.S.’s
father as a car salesman. Appellant paid A.S. $5 to $10 each time she modeled, and
sometimes he gave her clothes. Appellant would pick up A.S. from her home, feed her
dinner, and have her “model” for about one hour. A.S. would go to appellant’s studio
approximately two times a week. In the beginning, A.S.’s older sister went with her, also to
model, and later, A.S. went with another girl about her age. Sometimes, appellant would take
A.S. to his studio alone. A.S. modeled for appellant for a little over two years.
           In November 1999, A.S.’s mother asked her if appellant had ever “done anything” to
her. A.S. responded by crying and going to her room. Later, A.S. told her parents and
investigators that appellant had pushed his thumb “from where babies come from.” 
           Detective Leslie Hicks investigated the case, and on November 30, 1999, she executed
search warrants at appellant’s residence and place of business. During the search, Hicks
recovered still pictures of children, a video camera, videotapes, towels, blindfolds, baby
lotion and baby wipes. Detective Hicks also obtained blood samples from both A.S. and
appellant. Appellant was indicted for two counts of aggravated sexual assault of a child.
 
 
                                                       DISCUSSION
Competency
           In his first point of error, appellant complains that “he was denied his due process
under the Fifth and Fourteenth Amendments of the United States Constitution and article I,
sections 13 and 19 of the Texas Constitution when the trial court failed to conduct a jury trial
to determine the issue of his competency to stand trial.” 
           To be granted a separate jury trial to determine competency, first, it is necessary that
some evidence come before the court of sufficient force to create in the court’s mind a
bonafide doubt as to the defendant’s competency. Collier v. State, 959 S.W.2d 621, 625
(Tex. Crim. App. 1997); see also Alcott v. State, 51 S.W.3d 596 (Tex. Crim. App. 2001). If
evidence comes before the court to create in the court’s mind a bonafide doubt as to the
competency of the accused, the court should conduct an inquiry out of the presence of the
jury to determine whether or not there is some evidence to support a finding of incompetency
of the accused to stand trial. Id. Only if such a bonafide doubt exists need the court conduct
an inquiry. In general, a bonafide doubt is raised so as to require the inquiry only if evidence
indicates recent severe mental illness, at least moderate mental retardation, or truly bizarre
acts by the defendant. Id.
           Appellant presented his counsel’s statement and testimony to support his claim of
incompetency. Counsel stated that appellant was “unable to communicate effectively to me. 
This is based on a lack of response as a result of a question presented to Mr. Daftarian as to
specifics of the offense, as to parties who would assist him in thus–providing evidence in his
behalf.” Appellant’s trial counsel also testified that appellant “does not have the present
ability to communicate [to counsel]; or if he does, for some reason, he is not communicating
with us.”
           The evidence to which appellant points was insufficient to raise a bonafide doubt;
therefore the trial court was not required to hold an inquiry, much less to submit the question
to a jury. The trial court did not abuse its discretion in failing to impanel a separate jury to
determine appellant’s competency to stand trial. See id. Accordingly, appellant’s first point
of error is overruled.



Mental Health Expert
           In his second point of error, appellant claims that the trial court erred by failing to
appoint a mental health expert. Appellant also claims that the error violated his “right to due
process, under the Fifth and Fourteenth Amendments and article I, sections 13 and 19 of the
Texas Constitution.” 
           A defendant can request an examination to determine competency at any time the
issue of the defendant’s competency to stand trial is raised, and the court may appoint
disinterested experts. Tex. Code Crim. Proc. Ann. art. 46.02 § 3(f) (Vernon Supp. 2002)
(emphasis added). The trial court determines whether there is some evidence, a quantity
more than a scintilla, that rationally may lead to a conclusion of incompetence. See Tex.
Code Crim. Proc. Ann. art. 46.02 § 2(a) (Vernon Supp. 2002); Allcott v. State, 51 S.W.3d
596, 600 (Tex. Crim. App. 2001). We review the trial court’s decision to deny a psychiatric
examination for an abuse of discretion. Bigby v. State, 892 S.W.2d 864, 885 (Tex. Crim.
App. 1994). As discussed under point of error one, no bonafide doubt as to the appellant’s
competency existed. Therefore, the trial court did not abuse its discretion by refusing to
appoint a mental health expert. Accordingly, we overrule appellant’s second point of error. 
Ineffective Assistance of Counsel
           In his third point of error, appellant claims that he was denied effective assistance of
counsel under the Sixth Amendment of the United States Constitution and article I, section
10 of the Texas Constitution. Appellant raises nine subpoints to support his claim of
ineffective assistance.
           The standard of review for evaluating claims of ineffective assistance of counsel is
set forth in Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). See
Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999); Gamble v. State, 916 S.W.2d
92, 93 (Tex. App.—Houston [1st Dist.] 1996, no pet.). Appellant must show that (1)
counsel’s performance was so deficient that he was not functioning as acceptable counsel
under the Sixth Amendment, and (2) but for the counsel’s error, there is a reasonable
probability that the result of the proceedings would have been different. See Strickland, 466
U.S. at 687, 104 S. Ct. at 2064; Thompson, 9 S.W.3d at 812; Gamble, 916 S.W.2d at 93. It
is the defendant’s burden to prove ineffective assistance of counsel. Strickland, 466 U.S. at
687, 104 S. Ct. at 2064; Gamble, 916 S.W.2d at 93. Defendant must overcome the
presumption that, under the circumstances, the challenged action might be considered sound
trial strategy. Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; Thompson, 9 S.W.3d at 813;
Gamble, 916 S.W.2d at 93. 
           Appellant cites to five occurrences during trial that he claims show his counsel was
ineffective. First, appellant claims that his trial counsel was ineffective because he failed to
object to the admission of irrelevant, extraneous offenses by the State during its case in chief. 
Specifically, he complains that counsel failed to object to the admission of evidence
regarding a hidden camera, videotapes, and semen evidence, and to testimony about
appellant’s rubbing lotion on the victim. This evidence was part of the offense for which
appellant was tried.
           The “act of rubbing lotion on the victim” was not an extraneous act. The victim
testified that, before appellant pushed his thumb “from where babies come from,” he would
rub lotion on her. 
           The videotapes were taken with the hidden camera and showed A.S. and another little
girl naked and changing their clothes in appellant’s dressing room. The semen evidence came
from towels that were recovered from appellant’s modeling studio. One towel had a “Saved
by the Bell” logo on it, and the other, had an “ALF” logo on it, and they also had blood stains
on them. An expert testified that the semen was consistent with appellant’s DNA profile. 
Furthermore, the expert testified that he compared A.S.’s blood with the stains found on the
towels, and it was likely that it was her blood on the “Saved by the Bell” towel. 
           Article 38.37 makes an exception for evidence of extraneous offenses or acts in
proceedings in which the victim is under the age of 17. It reads, in pertinent part,
Notwithstanding Rules 404 and 405, Texas Rules of Criminal Evidence, evidence of
other crimes, wrongs, or acts, committed by the defendant against the child who is the
victim of the alleged offense shall be admitted for its bearing on relevant matters,
including: 

           (1) the state of mind of the defendant and the child; and
(2) the previous and subsequent relationship between the defendant and the child.
 
Tex. Code Crim. Proc. Ann. art. 38.37 § 2 (Vernon Supp. 2002) (emphasis added). The
hidden camera, the video tapes, and the semen and blood evidence were all relevant and thus,
admissible under article 38.37, section 2. See Stahle v. State, 970 S.W.2d 682 (Tex.
App.—Dallas 1998, pet. ref’d) (evidence of extraneous offenses of improper fondling
allegedly committed by defendant against child victim were relevant and admissible on
current charges of aggravated assault involving same child). An objection by trial counsel
would have been appropriately overruled. 
           Appellant also claims that his trial counsel was ineffective because (1) he failed to
request a limiting instruction at the time any alleged extraneous offenses were admitted; (2)
he failed to request a jury instruction in the court’s charge requiring the State to prove
extraneous offenses beyond a reasonable doubt; (3) he failed to object to the State’s opening
statement; and (4) he failed to object to the State’s “improper” plea for law enforcement. 
           The record is silent as to why appellant’s counsel acted as he did. In such
circumstances, our duty is clear—we must presume counsel made all significant decisions
in the exercise of reasonable professional judgement. Jackson v. State, 877 S.W.2d 768, 771
(Tex. Crim. App. 1994); Broussard v. State, 68 S.W.3d 197 (Tex. App.— Houston [1st Dist.]
2002, pet. ref’d). The Court of Criminal Appeals has repeatedly held that, without a
sufficient record, an appellant cannot overcome this presumption, and we cannot conclude
counsel was ineffective. See Choung Duong Tong v. State, 25 S.W.3d 707, 714 (Tex. Crim.
App. 2000); Broussard, 68 S.W.3d at 197.         
           Appellant claims that his trial counsel was ineffective because he failed to properly
prepare witness Charles Russ, a sex-offender probation officer. Appellant complains that
trial counsel failed to discuss with Russ what his possible testimony would be. Appellant
specifically refers to an answer by Russ that the “only sure way they’re not going to reoffend
is to put them in a coffin” as evidence of appellant’s trial counsel’s lack of knowledge as to
how Russ would testify. The record reflects that trial counsel conducted a lengthy
examination of Russ concerning the sex-offender probation program. The complained-of
testimony occurred close to the end of counsel’s questioning. 
           At the hearing on the motion for new trial, trial counsel stated, through an affidavit,
that he subpoenaed Russ and spoke with him the day before Russ testified. Counsel
explained that his trial strategy was to have Russ “educate the jury on the rigid safeguards
imposed by statute.” Russ testified at the hearing on the motion for new trial, and he stated
that he spoke to defense attorneys for approximately 7 to 10 minutes and they told him that
they would be asking him about the probation program. Russ also testified that, based on his
experiences testifying for other sex-offenders, he felt comfortable, and he had an idea what
he would be asked by the attorneys. Based on counsel’s questioning of Russ at trial and the
hearing on the motion for new trial, we cannot find that counsel’s performance was so
deficient that he was not functioning as acceptable counsel under the sixth amendment. 
           Appellant claims his trial counsel was ineffective because he failed to object to the
trial court’s failure to impanel a jury to determine appellant’s competency. As stated under
point of error one, appellant’s trial counsel presented evidence of appellant’s alleged
incompetency to the trial court. The trial court did not find any evidence that appellant was
incompetent and ruled against impaneling a separate jury to determine competency. Trial
counsel received an adverse ruling as to the incompetency hearing and was not required to
make any further objections. Accordingly, trial counsel was not deficient, and appellant fails
under the first prong of Strickland.
           Appellant complains that trial counsel was, by its own admission, not prepared for
trial, and that trial counsel failed to prepare appellant to testify on his own behalf, and
therefore, was ineffective. Appellant points to two sentences made by his trial counsel in the
hearing on the motion for continuance to support that he was unprepared. However,
appellant failed to show that counsel’s performance was so deficient that he was not
functioning as acceptable counsel under the sixth amendment. Moreover, appellant failed
to show how further preparation could have led to a different result at trial. 
           Finally, appellant also claims that his trial counsel caused him to involuntarily waive
his right to testify by failing to prepare him for trial. At the hearing on the motion for new
trial, appellant stated that he wanted to testify at his trial, but he was never given the chance. 
He further testified that he understood he had the right to take the stand if he chose and that
his trial counsel advised him that it would be better if he did not testify. Finally, appellant
testified that his trial counsel never pressured him not to testify. Here, the record supports
that trial counsel’s advice to appellant against taking the stand was sound trial strategy, and,
therefore, it was not ineffective.
           After reviewing all of appellant’s claims, we find that trial counsel was not ineffective
for the aforementioned reasons, and, therefore, we overrule appellant’s third point of error.
Legal and Factual Sufficiency
           We review legal sufficiency in the light most favorable to the verdict to determine if
any rational trier of fact could have found the elements of the crime beyond a reasonable
doubt. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). In
reviewing the evidence on factual sufficiency grounds, all of the evidence as a whole must
be reviewed, and not only in the light most favorable to the prosecution. Clewis v. State, 922
S.W.2d 126, 129 (Tex. Crim. App. 1996). After reviewing the evidence, we will not deem
it factually insufficient unless (1) it is so weak as to be clearly wrong and manifestly unjust
or (2) the adverse finding is against the great weight and preponderance of the available
evidence. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). However, in a factual
sufficiency review, the appellate court should not substitute its own judgment for that of the
fact finder. Jones v. State, 944 S.W.2d 642, 648 (Tex.Crim. App. 1996).
 
 
 
           Evidence favorable to the verdict
           At trial, Josie Sanchez, the victim’s mother testified for the State. She testified that
when she asked her daughter if appellant had done anything to her, her daughter started to
cry and went to her room.
           Detective Leslie Hicks testified for the State. She testified that, pursuant to two
search warrants, Hicks searched appellant’s residence and place of business. At appellant’s
studio, Hicks found a hidden camera that was set up behind a “dressing room.” The dressing
room was just a curtain where the children would change their clothes. Hicks explained that
there was a video recorder that was hooked up to a small pin-hole camera between two tall
mirrors in the dressing room. Hicks further testified that the pin-hole camera was positioned
two feet, five inches above the ground. Other items that Hicks found at appellant’s business
included, towels, boxes of baby wipes, applications for models, bottles of lotion, and
blindfolds. From appellant’s residence, Hicks recovered two videotapes that were locked in
a safe. Appellant opened the safe for Hicks when Hicks executed the search warrant. In
addition, photographs, which were admitted into evidence, were recovered from appellant’s
residence. 
           An edited version of the videotapes that were taken from appellant’s residence was
played for the jury. The video showed A.S. and two other girls changing in the dressing
room. The video also showed A.S. and another girl, partially undressed, rubbing lotion on
each other. Most of the video footage was of the girls from the neck down, which was
consistent with Hicks’s testimony about where the pin-hole camera was positioned. The
video had some footage that allowed the viewer a clear look at the girls’ faces. A.S. was one
of the girls in the video. 
           A.S. testified at trial. She testified that appellant would take pictures of her in a
bathing suit. A.S. said she would sometimes go to appellant’s studio with her older sister,
who also modeled, or with another girl who was about her age. Also, A.S. said she would
go to appellant’s studio alone. She testified that sometimes appellant had her come out in
a towel. A.S. stated that appellant put her on his desk, took off her towel, and he rubbed
lotion all over her body and all over himself. She said that appellant blindfolded her and
then, with his thumb, he “pushed it from where babies come from.” At trial, A.S. used a doll
to show the jury where appellant had touched her. Afterwards, A.S. stated that appellant
would wipe her off with baby wipes. In addition, A.S. said that she was “kind of” scared of
appellant, and she had reoccurring thoughts about the incidents.
           Wilson Young, a DNA specialist, testified about blood stains and semen found on the
towel recovered from appellant’s business. He testified that the semen matched appellant,
and there was an 86% chance that the blood stains were from A.S.’s blood. 
           Evidence unfavorable to the verdict
           Josie Sanchez testified that her daughter had been going to appellant’s studio for two
years before she mentioned anything about his inappropriate touching. Sanchez also testified
that appellant was a close family friend and she did not suspect anything for two years. A.S.
testified that her parents let her go back to the studio after she had told them about appellant
touching her. A.S. also testified that she was not afraid of appellant when she went back to
the studio and she and her sister began calling appellant after she had told her parents what
had happened.
           Detective Hicks testified that the victim’s family had a civil suit pending against
appellant.
           Analysis
           Here, A.S. testified for the State, and her testimony was supported by the physical
evidence recovered from appellant’s home and business. Furthermore, A.S’s mother testified
that her daughter was upset after being asked about appellant’s behavior. Appellant called
no witnesses. 
           After viewing the evidence in the light most favorable to the verdict, we find that any
rational trier of fact could have found the elements of the crime beyond a reasonable doubt. 
Furthermore, after viewing the record as a whole, we do not find that (1) the evidence is so
weak as to be clearly wrong and manifestly unjust or (2) the adverse finding is against the
great weight and preponderance of the available evidence. 
Motion for New Trial
           In his sixth point of error, appellant claims that the trial court abused its discretion in
denying appellant’s motion for new trial because he was denied his right to testify on his own
behalf. As discussed under the ineffective assistance of counsel analysis, appellant, by his
own admission, was not denied his right to testify. Furthermore, appellant’s trial counsel
presented affidavits to the court stating that he discussed appellant’s right to testify, and he
advised him against it. The trial court did not abuse its discretion in denying his motion for
new trial. Accordingly we overrule appellant’s sixth point of error.
           In his seventh point of error, appellant claims that the trial court abused its discretion
in denying his motion for new trial because he was denied his right to have punishment
assessed by the court. Appellant specifically argues that the court abused its discretion when
it gave trial counsel’s affidavits more credibility than appellant’s live testimony. Appellant
testified at the hearing on the motion for new trial that he had asked his trial counsel three
times to have the judge assess punishment. Appellant’s trial counsel stated in his affidavit
that he discussed with appellant his right to have punishment assessed by judge or a jury. 
Counsel stated that appellant told him he would like to have the jury assess punishment, and
appellant never indicated to him that he wanted a judge to do so. Because the trial court was
in a position to evaluate the credibility of the witnesses, we view the evidence in the light
most favorable to the trial court's ruling. Cantu v. State, 930 S.W.2d 594, 596 (Tex. Crim.
App. 1996). We find that the trial court did not abuse its discretion, and accordingly, we
overrule appellant’s seventh point of error.
           We affirm.
 
                                                                             Sam Nuchia
                                                                             Justice

Panel consists of Justices Wilson and Nuchia.
Do not publish. Tex. R. App. 47.