NO.
12-08-00370-CR

      

                         IN THE COURT OF
APPEALS         

 

            TWELFTH
COURT OF APPEALS DISTRICT

 

                                      TYLER, TEXAS

DARWIN
BROWN,                                            '                 APPEAL FROM THE 159TH

APPELLANT

 

V.                                                                         '                 JUDICIAL
DISTRICT COURT OF

 

THE STATE OF TEXAS,

APPELLEE                                                        '                 ANGELINA COUNTY,
TEXAS







OPINION

            Darwin
Brown appeals his conviction for aggravated robbery.  The indictment contained
a deadly weapon enhancement, and three enhancement paragraphs alleging prior
felony convictions.  After a motion to suppress was heard and denied, the case
was tried to a jury, which convicted Appellant, found the enhancement
allegations to be true, and sentenced him to imprisonment for forty-five
years.  On appeal, Appellant, pro se, raises seven issues: legal and factual
insufficiency of the evidence, lack of probable cause for his warrantless
arrest, ineffective assistance of counsel, improper seizure of his inmate mail
without a warrant, erroneous admission of hearsay testimony, and trial court
bias against him.  We affirm.

 

Background

            On
October 12, 2007, between 10:30 and 11:00 a.m., Arester Joe “A.J.” Smallwood
robbed the Homer Mini-Mart on Highway 69 in Huntington, which is in Angelina
County, Texas.  During the course of the robbery, Smallwood hit the store clerk
in the face with his fist and pistol, and fled with approximately one thousand
dollars.  Smallwood was apprehended in the woods near the Mini-Mart about two
hours later, after an extended search by police.  Smallwood was identified by
the store’s owner as the robber.  During questioning by the police, Smallwood
took the police to where he had concealed the money and pistol.  He also
identified Appellant, his boxing coach, as his accomplice, saying Appellant had
planned the robbery because he needed money to keep his boxing program open. 
Smallwood said that Appellant had driven him to the Mini-Mart in a light blue
Taurus and given him the pistol he used in the robbery.  He told the police the
handgun had been wrapped in a blue towel.  Smallwood testified that he ran
behind the store after the robbery because that is where Appellant was supposed
to pick him up for his escape.  Smallwood also explained that, before the day
of the robbery, Appellant had taken him to the Mini-Mart to “scope it out.” 
Appellant had sent Smallwood inside because the owner of the Mini-Mart knew
Appellant.

About
four days after his arrest, another inmate handed Smallwood an unsigned,
handwritten note.  The note’s author said that people were trying to get
Smallwood to “get a conviction against me.”  The note’s author explained that he
had told a lawyer that some other people had been trying to get Smallwood to
“do some robberies” with them, they had threatened to harm Smallwood’s family
if he named them, and Smallwood “put my name in it” because Smallwood did not
want his family to get hurt.  The note instructed Smallwood to rewrite the
statement and send it back to the author, who would send it to the lawyer.  The
note promised “we both will be out of here before Thanksgiving.”  The note then
encouraged Smallwood to “do the right thing [a]nd get this back to me” by
giving it back to the inmate who had delivered it to Smallwood.  Smallwood
testified that he thought Appellant had sent him the note and he thought he
would get out of jail if he changed his statement.  As instructed, Smallwood
rewrote the statement the way Appellant told him to write it, and sent it to
Appellant.  Smallwood also sent letters to his grandmother and Appellant’s
lawyer recanting his statement to the police that Appellant had been involved
in the robbery.

            Smallwood’s
sister testified that Appellant had called her brother at her Lufkin apartment
the morning of the robbery and picked him up there at about 10:00 that
morning.  She and one of Smallwood’s cousins testified that Smallwood had told
them Appellant wanted him to commit a robbery, and, because of that, Smallwood
had been trying to avoid Appellant.  Additionally, Smallwood’s aunt testified
that he had told her Appellant wanted him to do something that was “wrong” and
that he did not want to do.

            Thomas
E. Thomas, the owner of the Mini-Mart, testified that he knew Appellant because
he was a frequent customer in the Mini-Mart.  Thomas said Appellant came into
the store ten or fifteen minutes after the robbery wearing a “plastic wrapper”
on his boot.  Deputy David Rodriguez testified that he was almost struck by a
departing blue Taurus as he neared the Mini-Mart in response to the robbery
call.  Deputy David Wells testified that he saw Appellant in the blue Taurus
near the Mini-Mart when he was returning to his office after Smallwood’s
arrest, about two hours after the robbery.  Later that day, after Smallwood had
told the investigators of Appellant’s involvement, Deputy Wells and Smallwood
saw Appellant at a washateria on Highway 69 north of the Mini-Mart.  Deputy
Wells kept Appellant under surveillance until Deputy Rodriquez arrived and
arrested him.  

Deputy
Wells also testified about the postarrest inventory of the Taurus.  Officers
found a blue towel matching Smallwood’s description of the towel the gun had been
wrapped in and two slips of paper with Smallwood’s sister’s telephone number
written on them.  During the course of the investigation, Deputy Wells found a
store video from a business located on Highway 69 that showed a clear view of
the highway.  In the video, a Taurus that could have been driven by Appellant
was traveling toward Lufkin at 10:40 a.m.  Deputy Wells explained that the
Mini-Mart is five and one-half miles from Smallwood’s apartment and Appellant
would have had enough time to go get Smallwood and get to the Mini-Mart in time
to rob it at 10:50.  Additionally, Deputy Wells testified that he recovered the
Mini-Mart video showing Smallwood inside the store making a purchase several
days before the robbery, supporting Smallwood’s contention that Appellant had
brought him to the Mini-Mart to “case” the store for the robbery.

            Lufkin
police investigator Otis Almand, who also has training as a handwriting
analyst, testified that the note Smallwood received in jail encouraging him to
recant his allegation against Appellant had been written by Appellant.  

Tony
Buchanan, whose stepfather is Appellant’s uncle, testified for the defense.  He
said that Appellant came to his house in Lufkin between 10:15 and 10:30 the
morning of the robbery and stayed there for twenty to thirty minutes.  Maybe
half an hour later, he saw Appellant at the nearby home of Rosalynd Price,
Buchanan’s cousin, helping her spread lime in her front yard.  

Rosalynd
Price, Appellant’s cousin, testified that she saw Appellant at Buchanan’s house
at about 10:40 or 10:45.  He was getting out of his car as though he had just
arrived.  She went home and, about thirty minutes later, called Appellant who
was then on his way back to his house.  She asked him to come to her house to
put out lime to kill fleas, and he returned about 12:00 or 12:20.  They put
plastic bags on his pants legs to keep the lime off his clothes, and he put out
the lime, which took one to one and one-half hours.  

Ruth
Price, Appellant’s aunt, testified that Appellant was at the Homer Mini-Mart
sometime during the morning of the robbery and helped her pump gas.  Appellant
still had the plastic leg coverings on, and he told her he had just come from
Rosalynd’s house.  Kasandra Malone testified that Appellant was her boyfriend,
and used her blue Taurus, which had numerous mechanical problems, including
problems with the transmission.  She also identified a receipt she found in her
car’s ashtray for a purchase at 11:50 a.m. the morning of the robbery at a
Dollar Store in Huntington, for items including transmission fluid.

The
jury convicted Appellant as charged and sentenced him to imprisonment for forty-five
years.

 

Sufficiency
of the Evidence

            In
his first and second issues, Appellant asserts that the evidence is legally and
factually insufficient to support his conviction.   More specifically, he
contends that the State’s evidence fails to establish that he was a party to
the offense.  He argues that the circumstantial evidence supports theories of
both guilt and innocence and forensic evidence refutes any connection between
the gun and the blue towel found in his car.

Standard of Review

            In
conducting a legal sufficiency review, the evidence is viewed in the light most
favorable to the verdict to determine whether any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560
(1979); LaCour v. State, 8 S.W.3d 670, 671 (Tex. Crim. App.
2000).  The jury is the sole judge of the credibility of witnesses and of the
weight to be given their testimony.  Barnes v. State, 876 S.W.2d
316, 321 (Tex. Crim. App. 1994).  Any reconciliation of conflicts and
contradictions in the evidence is entirely within the jury’s domain.  Losada
v. State, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986).    

            When
reviewing the factual sufficiency of the evidence to support a conviction, we
view the evidence in a neutral light.  Steadman v. State, 280
S.W.3d 242, 246 (Tex. Crim. App. 2009).  The evidence, though legally
sufficient, is factually insufficient if it is so weak that the jury’s verdict
seems clearly wrong and manifestly unjust, or when, considering conflicting
evidence, the jury’s verdict, though legally sufficient, is nevertheless
against the great weight and preponderance of the evidence.  Berry v.
State, 233 S.W.3d 847, 854 (Tex. Crim. App. 2007).  A clearly wrong and
unjust verdict occurs where the jury’s finding is manifestly unjust, shocks the
conscience, or clearly demonstrates bias.  Id.  In conducting a
factual sufficiency review, we must discuss the evidence that, according to the
appellant, most undermines the jury’s verdict.  Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003).  Although we are authorized to second
guess the jury to a very limited degree, we must nevertheless give the jury’s
verdict a great degree of deference.  Grotti v. State, 273 S.W.3d
273, 283 (Tex. Crim. App. 2008).  The jury alone determines the weight to place
on contradictory testimonial evidence because that determination depends on the
jury’s evaluation of credibility and demeanor.  Cain v. State,
958 S.W.2d 404, 408-09 (Tex. Crim. App. 1997).

            Any
issue in a criminal case may be proven circumstantially.  See Jordan v.
State, 707 S.W.2d 641, 644-45 (Tex. Crim. App. 1986).  Circumstantial
evidence is as probative as direct evidence in establishing the guilt of an
actor, and circumstantial evidence alone can be sufficient to establish guilt. 
Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).  In a
circumstantial evidence case, it is unnecessary for every fact to point
directly and independently to the defendant’s guilt; rather, it is sufficient
if the finding of guilt is supported by the cumulative force of all the
incriminating evidence.  Powell v. State, 194 S.W.3d 503, 507
(Tex. Crim. App. 2006).  Further, the factual sufficiency of the evidence is
measured against the elements of the offense as defined by a hypothetically
correct jury charge.  Grotti, 273 S.W.3d at 281.  This charge
accurately promulgates the law, is authorized by the indictment, does not unnecessarily
increase the state’s burden of proof or restrict the state’s theories of
liability, and adequately describes the particular offense for which the
defendant was tried.  Id. at 280-81.  

Applicable Law

            A
person commits an offense if he unlawfully appropriates property with intent to
deprive the owner of the property.  Tex.
Penal Code Ann. § 31.03(a) (Vernon Supp. 2009).  Appropriation of
property is unlawful if it is without the owner’s effective consent.  Id.
§  31.03(b)(1).  “Appropriate” means to acquire or otherwise exercise
control over property other than real property.  Id. §
31.01(4)(B).  The Texas Penal Code states that “[a] person is criminally
responsible as a party to an offense if the offense is committed by his own
conduct, by the conduct of another for which he is criminally responsible, or
by both.” Tex. Penal Code Ann. §
7.01(a) (Vernon 2003).  Further, a person is criminally responsible for an
offense committed by the conduct of another if, acting with intent to promote
or assist the commission of the offense, he solicits, encourages, directs,
aids, or attempts to aid the other person to commit the offense. Tex. Penal Code Ann. § 7.02(a)(2)
(Vernon 2003).  

            Article
38.14 of the Texas Code of Criminal Procedure provides that “[a] conviction
cannot be had upon the testimony of an accomplice unless corroborated by other
evidence tending to connect the defendant with the offense committed; and the
corroboration is not sufficient if it merely shows the commission of the
offense.” Tex. Code Crim. Proc. Ann. art.
38.14 (Vernon 2005).   

            When
evaluating the sufficiency of corroboration evidence under the
accomplice-witness rule, we eliminate the accomplice testimony from
consideration and then examine the remaining portions of the record to see if
there is any evidence that tends to connect the accused with the commission of
the crime. Malone v. State, 253 S.W.3d 253, 257 (Tex. Crim. App.
2008).  To meet the requirements of the rule, the corroborating evidence need
not prove the defendant’s guilt beyond a reasonable doubt by itself; rather,
the evidence must simply link the accused in some way to the commission of the
crime and show that rational jurors could conclude that this evidence
sufficiently tended to connect the accused to the offense.  Id. 
It is possible that circumstances that are apparently insignificant may
constitute sufficient evidence of corroboration.  Id. 
Additionally, proof that the accused was at or near the scene of the crime at
or about the time of its commission, when coupled with other suspicious
circumstances, may tend to connect the accused to the crime so as to furnish
sufficient corroboration to support a conviction.  Id.  Evidence
of flight or other suspicious behavior can also corroborate accomplice
testimony and connect a defendant to a crime.  Hernandez v. State,
939 S.W.2d 173, 178 (Tex. Crim. App. 1997).

Discussion

            In
a review of the legal sufficiency of the evidence, we view the evidence in the
light most favorable to the verdict.  See Jackson, 443 U.S. at
319, 99 S. Ct. at 2789.  A.J. Smallwood testified that Appellant, who wanted
the money to keep his boxing program open, had been urging him to commit the
robbery.  Smallwood also testified that Appellant had driven him to the
Mini-Mart, once to “case” the store in preparation for the robbery, and again
on the day of the crime to commit the robbery.  Smallwood further testified
that Appellant gave him the pistol he used to rob the store, and was to pick
him up after the robbery.  Smallwood testified that Appellant’s pistol had been
wrapped in a blue cloth.  Smallwood also testified that Appellant had
requested, in a note he received while he and Appellant were in jail, that he
recant his statement to police that Appellant had been involved in the
robbery.  In response, Smallwood had written letters recanting his statement of
Appellant’s involvement. 

The
evidence before the jury further indicated that Appellant was at the scene of
the crime immediately after the robbery.  Deputy Rodriguez testified he was
almost struck by a blue Taurus while responding to the robbery call.  Later, he
saw Appellant in the same car at a washateria near the Mini-Mart.  Deputy Wells
also saw Appellant in the blue Taurus near the Mini-Mart after Smallwood’s
arrest.  During the inventory of Appellant’s Taurus, Deputy Wells found a blue
towel in the car, as well as two pieces of paper with Smallwood’s sister’s
telephone number written on them.  And Deputy Wells recovered security video
from the Mini-Mart taken days before the robbery, showing Smallwood in the
store.  This was consistent with Smallwood’s claim that Appellant took him to
the store to evaluate the store in anticipation of the robbery.   A handwriting
analyst testified that the note to Smallwood urging him to recant the
allegations against Appellant had been written by Appellant.

            Smallwood’s
sister testified that Appellant picked him up the morning of the robbery.  She
and one other witness testified that Smallwood had told them that Appellant
wanted him to commit the robbery, while a third witness testified that
Appellant wanted Smallwood to do something he knew was “wrong.”  They also
testified that Smallwood had been avoiding Appellant because of the pressure to
commit the crime.

            In
applying Article 38.14, we must also consider whether there was sufficient
corroborating evidence of Smallwood’s statements that Appellant was involved in
the robbery, other than Smallwood’s statements and the facts of the crime
itself.  See Tex. Code Crim.
Proc. Ann. art. 38.14.  As noted, the evidence does not have to
establish his guilt beyond a reasonable doubt or directly link him to the
crime, but there must be “some” evidence that “tends to connect” him to the
crime.  See Malone, 253 S.W.3d at 257.  Such evidence includes
Appellant’s presence at the scene and his leaving the area of the robbery
immediately after the crime, as well as the blue cloth police recovered during
the inventory of his car.  Further, Appellant picked Smallwood up from his
sister’s apartment the morning of the robbery.  Also, Smallwood’s family
testified that Smallwood had told them before the robbery that Appellant was
trying to get him to commit the robbery.  And the note asking Smallwood to
recant his allegations against Appellant was established by the handwriting
expert to have been written by Appellant.  Those facts constitute “some
evidence” that is sufficient corroboration tending to connect Appellant to the
robbery.  Id.  The evidence being legally sufficient, we overrule
Appellant’s first issue.

            In
his second issue, Appellant contends the evidence is factually insufficient to
support his conviction.  We consider all of the evidence in a neutral light.  See
Steadman, 280 S.W.3d at 246.  In addition to the evidence in support
of the verdict, the evidence also shows that technicians working for police
investigators were unable to detect either Appellant’s DNA or his fingerprints
on the gun, and the blue towel police found in Appellant’s car was not the
source of the blue threads found on the gun. Also, Buchanan testified that
Appellant was at his house the morning of the robbery, and then went to
Rosalynd Price’s house.  Rosalynd Price also testified that Appellant came to
her house to help her put lime in her yard, and they tied plastic around his
pants legs to keep the lime off his clothes.  Ruth Price testified she later
saw Appellant at the Mini-Mart and he still had the plastic on his legs. 
Kasandra Malone testified Appellant used her car, which had transmission problems. 
She offered a receipt she found in the ashtray after she recovered the car from
the police that indicated someone had purchased transmission fluid at the
Dollar Store in Huntington at 11:50 a.m. on the morning of the robbery.

The
technicians explained that any fingerprints and DNA could have been removed
while the gun was in the waistband of Smallwood’s pants.  The jury could have
determined that the fact that the blue towel found in the car was not the
source of threads found on the gun did not necessarily mean that Smallwood lied
about the gun having been wrapped in a blue towel in Appellant’s vehicle. 
Defense witnesses said Appellant was with Buchanan at the time of the robbery
and spreading lime just after noon.  This conflicts with Smallwood’s testimony
and that of the officers who saw Appellant just after the morning robbery. 
Additionally, Thomas testified that Appellant was in the Mini-Mart just ten or
fifteen minutes after the robbery, with plastic on his boot.  Further, defense
witnesses conflicted with each other.  Rosalynd and Buchanan said Appellant was
spreading lime after noon, while Ruth said she saw him at the Mini-Mart in the
morning with plastic on his legs.  It is the jury’s role to weigh such
conflicting evidence, and determine the facts of the case.  See Cain,
958 S.W.2d at 408-09.  The evidence that Appellant adduced is not so strong as
to put the jury’s verdict in question.  See Berry, 233 S.W.3d at
854.  The jury’s verdict is not manifestly unjust, does not shock the
conscience, and does not clearly demonstrate bias.  See id.  Thus,
the evidence is factually sufficient to support the judgment.  We overrule
Appellant’s second issue. 

 

Warrantless
Arrest

            In
his third issue, Appellant contends that his constitutional rights under the
Fourth[1] and Fourteenth[2]
Amendments
were violated by his warrantless arrest, which he asserts was made without
probable cause and in the absence of exigent circumstances.  Further, Appellant
alleges his initial arrest violated Article 14 of the Texas Code of Criminal
Procedure.  He asserts that Smallwood was not a credible witness and
Smallwood’s testimony was not corroborated by other evidence to support the
arrest.  Finally, Appellant argues that the evidence seized when he was
unlawfully arrested cannot be used against him.  

Standard of Review

            We
review the trial court’s ruling on a motion to suppress for an abuse of
discretion.  State v. Dixon, 206 S.W.3d 587, 590 (Tex. Crim. App.
2006).  We reverse the judgment only if it is outside the zone of reasonable
disagreement.  Id.  We will sustain the lower court’s ruling if
it is reasonably supported by the record and is correct on any theory of law
applicable to the case.  Id.  An appellate review of a trial
court’s decision to overrule a motion to suppress requires the reviewing court
to recognize the trial court is the sole trier of fact and judge of the
credibility of the witnesses and the weight to be given their testimony.  State
v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).  We give almost
total deference to a trial court’s express or implied determination of
historical facts and review de novo the trial court’s application of the law to
the facts.  Dixon, 206 S.W.3d at 590. 

Applicable Law

            As
a general rule, police officers must obtain an arrest warrant before taking
someone into custody.  Hughes v. State, 24 S.W.3d 833, 838 (Tex.
Crim. App. 2000).  There are exceptions to this rule.  Article 14.03(a)(1) of
the Texas Code of Criminal Procedure provides that any peace officer may
arrest, without warrant, persons found in suspicious places and under
circumstances that reasonably show such persons have been guilty of some
felony.  Tex. Code Crim. Proc. Ann. art.
14.03(a)(1) (Vernon Supp. 2009); Gallups v. State, 151 S.W.3d
196, 201-02 (Tex. Crim. App. 2004).  Article 14.04 states that “[w]here it is
shown by satisfactory proof to a peace officer, upon the representation of a
credible person, that a felony has been committed, and that the offender is
about to escape, so that there is no time to procure a warrant, such peace
officer may, without warrant, pursue and arrest the accused.”  Tex. Code Crim. Proc. Ann. art. 14.04
(Vernon 2005).  What must be shown by “satisfactory proof” is the legal
equivalent of constitutional “probable cause.”  Hughes, 24 S.W.3d
at 838.  The necessary inquiry is “not whether there was a warrant or whether
there was time to get one, but whether there was probable cause for the arrest,”
and if there was probable cause, whether “the arrest, though without a warrant,
was lawful.”  United States v. Watson, 423 U.S. 411, 417, 96 S.
Ct. 820, 824-25, 46 L. Ed. 2d 598 (1976).

            Probable
cause for a warrantless arrest exists where the police have reasonably
trustworthy information sufficient to warrant a reasonable person to believe a
particular person has committed or is committing an offense.  Guzman v.
State, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997).  The determination of
the existence of probable cause concerns “the factual and practical
considerations of everyday life on which reasonable and prudent [people], not
legal technicians, act.”  Id.  Probable cause deals with
probabilities; it requires more than mere suspicion but far less evidence than
that needed to support a conviction or even that needed to support a finding by
a preponderance of the evidence.  Id.

Discussion

            After
the suppression hearing, the trial court explained that the officers had some
indication of the reliability of Smallwood’s information because the car
matching the description he gave had been encountered in the area of the
robbery three different times and the money and gun were where he said they
would be.  The court found that there were suspicious circumstances warranting
further investigation and detention to determine if the Taurus and Appellant
were connected to the robbery, meeting the exception to the warrant
requirement.

            Appellant
argues that the person who identified him, Smallwood, was his co-defendant, and
since Smallwood had just been arrested for the robbery, Smallwood, as a
criminal, was an unreliable witness.  Therefore, the argument continues, the
State did not meet the requirement of Article 14.04 that the police obtain
information from a “credible person.”  Appellant asks this court, in effect, to
establish a new rule, that a criminal’s statement to police can never be the
basis for arresting another criminal.  Clearly, the effect of such a broad rule
would eviscerate any reason for the police to interrogate a defendant regarding
co-defendants, if, after acquiring the information, it lacks any credibility
because it came from a confessed criminal.  This is not the case.  Rather, a
confessing criminal’s statements, including those implicating others, are
weighed by the officers in light of the other evidence available.  See Self
v. State, 677 S.W.2d 781, 783 (Tex. App. – San Antonio 1984), aff’d,
709 S.W.2d 662 (Tex. Crim. App. 1986).    

In
the present situation, Smallwood is, besides his co-defendant, the only one who
could identify Appellant as being a party to this crime.  Further, the officers
had seen Appellant in the immediate area.  Notably, Deputy Rodriquez saw
Appellant leaving quickly as he arrived to begin the investigation of the
robbery.  In retrospect, immediately after Smallwood identified Appellant in
the car at the washateria, the officers realized that, consistent with what
Smallwood had told them, Appellant had been in the area to pick up Smallwood
after the robbery, and that he was still driving the same vehicle Smallwood
identified.  In this situation, Smallwood was sufficiently credible for police
to rely on the information he provided about Appellant.  See Coffey v.
State, 744 S.W.2d 235, 241 (Tex. App. – Houston [1st Dist.] 1987), aff’d,
796 S.W.2d 175 (Tex. Crim. App. 1990).

Appellant
contends that, since the robbery had occurred several hours before his arrest,
the police had time to get a warrant for his arrest, based on Smallwood’s
statements to the police.  However, at that time, as Appellant previously
argued, Smallwood’s credibility was not sufficiently substantiated.  It was
after Smallwood pointed out Appellant, near the location of the robbery, and
the police immediately recognized the car as the one that had been speeding
from the area just after the robbery, that indices of Smallwood’s credibility
were substantiated.  At that point, investigators were not required to then
suspend their investigation of a man implicated in a violent robbery.

Under
the facts of this case, the trial court correctly determined that when
Appellant was found sitting in his car in front of the washateria, near the
scene of the robbery, he was found in a suspicious place and under
circumstances reasonably showing him to be guilty of a felony.  See Tex. Code Crim. Proc. Ann. art.
14.03(a)(1).  Further, in light of Appellant’s previous quick departure when he
had seen the police patrolling the area as they searched for Smallwood, and
because he was in the driver’s seat of an automobile, the police were within
the law to deem Appellant as “about to escape,” thereby eliminating the
requirement that the police get a warrant for Appellant prior to arresting
him.  See Tex. Code Crim. Proc.
Ann. art. 14.04.  Thus, it was shown by satisfactory proof, by a
credible person, that a felony had been committed and the offender was about to
escape.  See id.  

Accordingly,
the officers had probable cause to arrest Appellant without a warrant according
to Article 14.04 and Article 14.03(a)(1).  See Hughes, 24 S.W.3d
at 838.  The ensuing search of Appellant’s vehicle was a proper inventory
conducted pursuant to a lawful impoundment and the items found in the vehicle
were admissible.  See Garza v. State, 137 S.W.3d 878, 882 (Tex.
App. – Houston [1st Dist.] 2004, pet. ref’d).  The trial court’s ruling is not
outside the zone of reasonable disagreement.  See Dixon, 206
S.W.3d at 590.  The warrantless arrest of Appellant was consistent with both
federal constitutional and state statutory law.  We overrule Appellant’s third
issue.

 

Ineffective Assistance of Counsel

In
his fourth issue, Appellant contends that his trial counsel provided him
ineffective assistance during the pretrial, trial, and posttrial phases of the
case against him.  Specifically, Appellant asserts that counsel failed to have
“a firm grasp of the essential facts and law which caused him to be ineffective,
as a matter of law.”  Appellant argues that, but for trial counsel’s errors,
the motion to suppress would have been granted and the items found in the
vehicle would not have been entered into evidence.  Then there would have been
no evidence to corroborate Smallwood’s testimony and Appellant would not have
been found guilty.

Standard
of Review

The
standard for testing claims of ineffective assistance of counsel is set out in
Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d
674 (1984), and adopted for Texas constitutional claims in Hernandez v.
State, 726 S.W.2d 53, 56‑57 (Tex. Crim. App. 1986).  To prevail
on his claim of ineffective assistance, an appellant must show that his
attorney's representation fell below the standard of prevailing professional
norms, and that there is a reasonable probability that, but for the attorney's
deficiency, the result of the trial would have been different.  Tong v.
State, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000).  A reasonable
probability is a probability sufficient to undermine confidence in the
outcome.  Id.  Appellant bears the burden of proving his
ineffective assistance claim by a preponderance of the evidence.  Jackson
v. State, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998).

Our
review of counsel's representation is highly deferential.  When evaluating a
claim of ineffective assistance, the appellate court looks to the totality of
the representation and the particular circumstances of each case.  Thompson
v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).  An appellant faces
the onerous burden of overcoming a strong presumption that counsel's conduct
falls within a wide range of reasonable representation.  Strickland,
466 U.S. at 689, 104 S. Ct. at 2065; Tong, 25 S.W.3d at 712. 
This court will not second guess through hindsight the strategy of counsel at
trial, nor will the fact that another attorney might have pursued a different
course support a finding of ineffectiveness.  Blott v. State, 588
S.W.2d 588, 592 (Tex. Crim. App. 1979).  Any allegation of ineffectiveness must
be firmly founded in the record, and the record must affirmatively demonstrate
the alleged ineffectiveness.  Thompson, 9 S.W.3d at 813.  When
there has been no posttrial proceeding at which trial counsel has been afforded
the opportunity to present evidence of the strategic bases, if any, for his
trial decisions, it is extremely difficult for an accused to make a showing of
deficient performance.  See Bone v. State, 77 S.W.3d 828,
833 (Tex. Crim. App. 2002).  Ordinarily, this kind of record is best developed
in a hearing on an application for writ of habeas corpus or a motion for new
trial. See Jackson, 973 S.W.2d at 957.  Absent such
evidence, appellate courts are not at liberty to find trial counsel’s conduct
was ineffective unless the challenged conduct was so outrageous that no
competent attorney would have engaged in it.  Goodspeed v. State,
187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

Discussion

Appellant’s
counsel on appeal filed a motion for new trial on the sole ground that “the
verdict was not in the interest of justice.”  Appellant filed his notice of
appeal just thirty days later.  There is no indication in the record before us
that a hearing was held on the motion for new trial.

Appellant
first complains that, at the suppression hearing, Appellant’s trial counsel had
no case law to offer the judge when asked.  At the suppression hearing, the
court and counsel discussed the warrant requirements for an arrest, indicating
counsel had a sufficient grasp of the law and the facts.  Counsel was not
ineffective because he had no cases printed out and ready to hand to the
court.  Appellant also complains that counsel did not present sufficient law to
support motions presented at trial.  Appellant’s complaint regarding motions
presented at trial is so vague and conclusory that it presents no complaint at
all.  See Tex. R. App. P.
38.1(i); Stahle v. State, 970 S.W.2d 682, 692 (Tex. App.–Dallas
1998, pet. ref’d).  

Appellant
complains that trial counsel failed to hire an expert to analyze the
handwriting on the letters admitted into evidence at trial.  The State’s expert
testified the letters were all written by the same person.  Appellant contends
a defense expert would have testified that he did not write the note urging
Smallwood to change his story.  The general rule is that the failure to call
additional witnesses does not constitute ineffective assistance of counsel
without a showing that the witnesses were available to testify and that their
testimony would have benefitted the defendant.  See Butler v. State,
716 S.W.2d 48, 55 (Tex. Crim. App. 1986).  Likewise, the failure to request the
appointment of an expert witness is not ineffective assistance in the absence
of a showing that the expert would have testified in a manner that benefitted
the defendant.  Cate v. State, 124 S.W.3d 922, 928 (Tex. App.–Amarillo
2004, pet. ref’d).  Nothing in this record shows that an expert witness had
been contacted and was willing to testify or what his testimony would have been
with respect to an analysis of the handwriting in the note.  Id. 
Therefore, based on the record before us, we cannot say that counsel’s
performance was deficient for failing to present testimony of a handwriting
analyst.  See Thompson, 9 S.W.3d at 813.

Appellant
also contends that counsel’s request for more funds for his attorney fees,
beyond that normally paid lawyers to represent indigent clients, so, as the
lawyer suggested, he would not be “working for free,” should be read as an
indication of ineffective assistance.  Or, to use Appellant’s own words, it was
“not a far stretch of the imagination to conclude that Appellant’s case has
suffered prejudice because counsel did not get the needed funds to perform the
vital task to provide effective assistance of counsel.”  The burden is on
Appellant to establish his claim of ineffective assistance of counsel.  The
record is silent as to how a lack of additional funds may have affected
Appellant’s case.  See id. at 814. 

Appellant
further complains counsel failed him posttrial because “counsel did not tell
him the meaning of the judgment or anything about the appeal.”  Though
Appellant asserts that “counsel had his engine reved [sic] up; but (he) was
going nowhere because he failed to engage the gear and let his foot off the
clutch,” this is not legal argument, or specific explanation of the actions
Appellant complains of.  See Stahle, 970 S.W.2d at 692. 
Moreover, the record contains a document signed by Appellant, the judge, and
trial counsel entitled “Certification of Defendant’s Right of Appeal”
specifically stating that Appellant was informed of his rights concerning any
appeal.  Furthermore, on the same day the judgment was signed, the trial court
appointed new counsel to handle Appellant’s appeal.  The order permitting trial
counsel to withdraw was signed a day later.  Once appellate counsel was
appointed and trial counsel permitted to withdraw, trial counsel no longer had
any duty to discuss appellate options.  See Tex. Code Crim. Proc. Ann. art. 26.04(j)(2) (Vernon Supp.
2009). 

Next,
Appellant contends that trial counsel erred in having the State’s handwriting
expert read to the jury the portion of the letter Appellant wrote to
Smallwood’s family indicating that Appellant has a criminal record.  Appellant
contends this could not be trial strategy, and complains that trial counsel
“should be made to explain [whether the reading of this section is] said
strategy.”  We note that the entire exhibit had previously been introduced into
evidence without objection.  However, since Appellant did not request a hearing
on his motion for new trial alleging this error, he has not established a
record explaining trial counsel’s strategy regarding why he failed to object or
why he asked the witness to read that portion aloud.  When the record is
silent, there is insufficient evidence to overcome the presumption that
counsel’s actions were part of a strategic plan and therefore within the wide
range of reasonable professional assistance.  See Tong, 25 S.W.3d
at 714.  

We
do not decide appeals on the basis of speculation about matters not shown in
the record.  Green v. State, 912 S.W.2d 189, 192 (Tex. Crim. App.
1995).  The record before us does not demonstrate the alleged ineffectiveness. 
We cannot say that trial counsel’s conduct was so outrageous that no competent
attorney would have engaged in it.  See Goodspeed, 187 S.W.3d at
392.  Appellant failed to meet his burden to show that trial counsel’s
representation fell below the standard of prevailing professional norms and
that there is a reasonable probability that, but for these alleged errors,
there would have been a different verdict.  See Tong, 25 S.W.3d
at 712.  We overrule Appellant’s fourth issue.

 

Seizure of Inmate Mail

In
his fifth issue, Appellant contends that, because he had a “justifiable
expectation of privacy” in his inmate mail, the Fourth Amendment to the United
States Constitution required the State to obtain a warrant before seizing his
mail.  Appellant also asserts there should have been a hearing outside the
presence of the jury addressing the veracity of the evidence.  He argues the
letters should not have been admitted because their prejudicial effect
outweighed their probative value. 

Appellant
does not specify which exhibits he is complaining about.  The State offered six
letters into evidence.  Appellant’s counsel stated on the record, as to each
one, that he had “no objection” to their admission.  When a defendant
affirmatively states that he has no objection to the admission of the evidence
during trial, he waives his right to complain on appeal that the evidence was
illegally obtained.  See Holmes v. State, 248 S.W.3d 194, 196
(Tex. Crim. App. 2008).  Neither has Appellant preserved his complaint that the
letters were inadmissible because their prejudicial effect outweighed their
probative value as there was no trial court objection on that basis.  See
Tex. R. App. P. 33.1.

            Moreover,
an inmate does not have an expectation of privacy.  Hudson v. Palmer,
468 U.S. 517, 527-28, 104 S. Ct. 3194, 3201, 82 L. Ed. 2d 393 (1984).  Seizure
of inmate mail is not a violation of an inmate’s constitutional right to be
free from unreasonable search and seizure. Stroud v. United States,
251 U.S. 15, 22, 40 S. Ct. 50, 53, 64 L. Ed. 103 (1919).  Additionally, there is no violation of an inmate’s constitutional rights
by prison officials reading the inmate’s nonlegal mail.  See Thomas
v. Allsip, 836 S.W.2d 825, 828 (Tex. App - Tyler 1992, no pet.).  Since
Appellant has no expectation of privacy, the corrections officers were within
their authority to obtain copies of his mail without a search warrant. 
Therefore, Appellant’s fifth issue is overruled. 

Hearsay Evidence

            In
his sixth issue, Appellant alleges the trial court erred in allowing hearsay
testimony by Smallwood’s family members who testified that he told them
Appellant tried to persuade him to rob a store.  Appellant alleges that the
testimony was offered to bolster the State’s case and to establish that
Appellant was a party to the offense.  Appellant argues that the trial court
committed “nonconstitutional error” and we must conduct a harm analysis.  He
further argues that admission of the testimony was harmful because it “had the
egregious injurious effect upon the jury’s psyche.” 

            Smallwood’s
sister testified that Smallwood tried to avoid Appellant because Appellant
wanted Smallwood to rob a store and Smallwood did not want to.  Smallwood’s
cousin testified that Smallwood told him Appellant wanted him to rob a store,
that Appellant asked Smallwood if he was scared of committing the robbery, and
that Appellant took Smallwood to the store to show him how he would do it and
where they would go.  Smallwood’s aunt testified that Smallwood told her
Appellant was trying to get him to do things that were “wrong” and that he did
not want to do, so Smallwood avoided Appellant.  Smallwood testified,
explaining that, about a week after the gym closed, Appellant started talking
to him about robbing a store named Homer’s in Huntington.  Smallwood said he
was stunned and scared and tried to hide from Appellant and avoid his calls. 
Smallwood testified that he told his sister and cousin what Appellant wanted
him to do.

            A
statement is not hearsay if it is offered against a party and is a statement
made by a co-conspirator during the course and in furtherance of the
conspiracy.  Tex. R. Evid.
801(e)(2)(E); King v. State, 189 S.W.3d 347, 359 (Tex. App. –
Fort Worth 2006, no pet.).  A statement furthers a conspiracy if it advances
the cause of the conspiracy or serves to facilitate it.  Guidry v. State,
9 S.W.3d 133, 148 (Tex. Crim. App. 1999).  Statements that are made in
furtherance of a conspiracy include those made (1) with intent to induce
another to deal with co-conspirators or in any other way to cooperate with or
assist co-conspirators, (2) with intent to induce another to join the
conspiracy, (3) in formulating future strategies of concealment to benefit the
conspiracy, (4) with intent to induce continued involvement in the conspiracy,
or (5) for the purpose of identifying the role of one conspirator to another.  Lee
v. State, 21 S.W.3d 532, 538 (Tex. App.–Tyler 2000, pet. ref’d).

            Here,
Appellant’s statements to Smallwood were made in furtherance of the conspiracy
because Appellant was attempting to induce Smallwood to enter into a conspiracy
to rob the store.  See id.  Therefore, the challenged statements
fall within the co-conspirator statements exception to the hearsay rule and
were admissible.  See Tex. R.
Evid. 801(e)(2)(E).  Furthermore, even if the trial court erred by
admitting the statements, the error is harmless because the same facts were
admitted into evidence without objection when Smallwood testified.  See Estrada
v. State, No. AP-75,634, 2010 Tex. Crim. App. LEXIS 722, at *71 n.29
(Tex. Crim. App. June 16, 2010).  Appellant’s sixth issue is overruled. 

 

Trial Court Bias

In
his final issue, Appellant contends the trial court was biased in its rulings
denying his motion to suppress and motion for directed verdict.[3]
 Appellant
contends that the trial court “carried the State’s unmet burden of proof” and
“erred to relieve the State of its burden.”  Appellant also contends that the
trial court “relieve [sic] the State of its burden when it [the court], not the
State cited a ‘suspicious place’ as an exception to the warrant requirement.” 
He further asserts that bias is demonstrated because the State did not present
any case law, yet the court ruled in its favor.     

Due
process requires that a neutral and detached judicial officer preside over the
proceedings.  See Brumit v. State, 206 S.W.3d 639, 645 (Tex.
Crim. App. 2006).  Absent a clear showing to the contrary, we presume that the
trial court was neutral and impartial.  Id.  In addressing issue
three, we explained that the trial court properly denied Appellant’s motion to
suppress.  In addressing issues one and two, we explained that there is both
legally and factually sufficient evidence to support the trial court’s judgment
and therefore the motion for directed verdict was properly denied.  The record
does not support Appellant’s bare assertions that denials of his motions
indicate bias on the part of the presiding judge.  We overrule Appellant’s
seventh issue.

 

Disposition

            Having
overruled Appellant’s seven issues, we affirm the trial court’s
judgment.

 

 

                                                                                      
Sam Griffith   

                                                                                                 
Justice

 

 

 

 

Opinion delivered July 14, 2010.

Panel consisted
of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

(PUBLISH)









                [1] “The right of the
people to be secure in their persons, houses, papers, and effects, against
unreasonable searches and seizures, shall not be violated, and no Warrants
shall issue, but upon probable cause, supported by Oath or affirmation, and
particularly describing the place to be searched, and the persons or things to
be seized.”  U.S. Const. amend.
IV.

 





                [2] “All persons born
or naturalized in the United States, and subject to the jurisdiction thereof,
are citizens of the United States and of the State wherein they reside.  No
State shall make or enforce any law which shall abridge the privileges or
immunities of citizens of the United States; nor shall any State deprive any
person of life, liberty, or property, without due process of law; nor deny to any
person within its jurisdiction the equal protection of the laws.”  U.S. Const. amend. XIV, § 1.





                [3] We
note that the hearing on the motion to suppress and the trial on the merits
were presided over by two different judges.  Appellant also asserts without supporting
argument that the trial court lacked jurisdiction to rule on the suppression
motion.  This assertion has no merit.  See Tex. Const. art. V, § 8.